UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Case No. 26-18871-SMG |
| ATLANTIC RECOVERY CENTER, LLC, | Chapter 11 (Subchapter V) |
| | (Joint Administration with *In re Centric Behavioral Health, LLC*, Case No. 26-18873-SMG, Pending) |
| Debtor. | |

_____/

**DECLARATION OF EVAN PRAGER IN SUPPORT OF
CHAPTER 11 PETITIONS AND FIRST DAY MOTIONS**

I, Evan Prager, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am the founder and Chief Executive Officer of the Debtors' behavioral health treatment platform and the Manager of Centric Behavioral Health, LLC ("CBH"), a Delaware limited liability company. CBH is the sole member and manager of Atlantic Recovery Center, LLC ("ARC" and, together with CBH, the "Debtors"). In those capacities, I am responsible for overseeing the Debtors' day-to-day operations, and I am familiar with the Debtors' businesses, financial affairs, capital structure, and books and records.

2.      On July 7, 2026 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Florida, Fort Lauderdale Division, and each Debtor elected to proceed under subchapter V of chapter 11. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a), 1108, and 1184 of the Bankruptcy Code. The Debtors will request that their chapter 11 cases be jointly administered.

3.    I submit this Declaration in support of the Debtors' chapter 11 petitions and the motions and applications filed contemporaneously herewith seeking relief on the first days of these cases (collectively, the "First Day Motions"). Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge, my review of the Debtors' books and records and other relevant documents, information provided to me by the Debtors' employees and professional advisors, or my opinion based upon my experience with the Debtors' operations and financial condition. If called upon to testify, I could and would testify competently to the facts set forth herein. I am authorized to submit this Declaration on behalf of the Debtors.

## I.  BACKGROUND AND THE DEBTORS' BUSINESS

### A.  The Debtors' Operations

4.    The Debtors operate a behavioral-health and addiction-treatment platform based in Broward County, Florida, providing residential mental-health treatment, partial hospitalization, and outpatient services to adults suffering from mental-health and substance-use disorders.

5.    ARC is a Florida limited liability company formed in 2014 (EIN ending 8883). ARC is the Debtors' operating entity and operates two licensed treatment facilities: (a) Reign Residential Treatment Center ("Reign RTC"), an adult residential mental-health treatment facility located at 14320 Mustang Trail, Southwest Ranches, Florida; and (b) Sanctuary Mental Health & Wellness ("SMHW"), a partial-hospitalization and outpatient program located at 1759 N. Andrews Square, Fort Lauderdale, Florida.

6.    The Debtors' facilities are fully accredited and licensed.  Both facilities are licensed by the Florida Agency for Health Care Administration ("AHCA").

7.    The Debtors' workforce consists of approximately 27 direct employees, who are employed through ADP TotalSource, a professional employer organization ("PEO") that co-employs the Debtors' workforce and administers payroll, payroll taxes, and employee benefits. In

addition, approximately 8 shared administrative staff members who serve the Debtors are employed by non-debtor affiliate Centric Executives, LLC. The Debtors' employees include the licensed clinicians, therapists, nurses, and behavioral-health technicians who provide around-the-clock care to the Debtors' patients.

8.	Substantially all of the Debtors' revenue is derived from commercial insurance reimbursement for behavioral-health services, principally from Aetna, Blue Cross Blue Shield of Florida, UnitedHealthcare, Carelon, and GEHA/UMR. During 2026, ARC's collections have averaged approximately $460,000 per month.

### B.  Corporate Structure

9.	CBH is a Delaware limited liability company and is the parent and sole member of ARC. CBH performs central treasury and administrative functions for the enterprise and is the primary borrower or obligor on most of the Debtors' funded debt.

10.	The Debtors are part of a broader corporate family that includes several non-debtor affiliates: Centric Management LLC and Centric Executives LLC, which provide shared management and administrative services; and Sanctuary Sober Living LLC, which provides recovery housing. The corporate family also includes certain wind-down entities: ET Health Holdings LLC (dissolved), and Tenn Recovery LLC and True Life Family Counseling LLC, whose Tennessee operations were closed in 2026.

11.	The Debtors' historical cash flows follow a consistent pattern: ARC's insurance receipts flow to CBH's central treasury, and CBH in turn pays management fees to the non-debtor affiliates on account of shared payroll and recovery-housing expenses.

12.	I am the Manager of CBH under CBH's Operating Agreement dated January 31, 2023. CBH is a manager-managed limited liability company. Its majority and sole voting member

is ETP Holdings LLC, which holds a 63.70% membership interest in CBH and of which I am the sole member.

## II.  EVENTS LEADING TO THESE CHAPTER 11 CASES

13.     The Debtors grew rapidly during 2024 and 2025, including through an expansion into Tennessee through affiliated entities. The Tennessee operations did not achieve sustainable profitability and were closed in 2026 at significant cost to the enterprise, which absorbed wind-down expenses at the same time that its Florida operations were experiencing slowing receivable collections.

14.     In September 2024, to fund growth, the companies obtained credit lines of $1,000,000 and $500,000 from Royal Oaks Capital Corp. ("Royal Oaks"). The Royal Oaks facilities bear interest at 16.5% on an interest-only basis, with balloon maturities in September and October 2026, and are secured by a blanket UCC-1 financing statement filed on October 8, 2024 against the assets of the entire corporate family.

15.     Beginning in January 2026, as receivable collections slowed, the companies turned to a series of merchant cash advance and receivables-purchase facilities bearing effective costs far above market rates, including: (a) Kapitus (January 20, 2026): $250,000 advanced in exchange for $317,250 of future receipts, repaid at $5,636 per week; (b) OnDeck: a $200,000 term loan repaid at $3,733 per week, at a stated 57.05% APR; (c) Rocket Capital NY (April 13, 2026): $315,000 advanced in exchange for $459,585 of future receipts, repaid at $14,362 per week; (d) Capital Assist (April 16, 2026): $150,000 advanced in exchange for $214,500 of future receipts, repaid at $8,250 per week; (e) Litefund Solutions (June 1, 2026): $200,000 advanced in exchange for $300,000 of future receipts, repaid at $3,000 per business day; (f) Forward Financing (March 19, 2026): $30,000 advanced in exchange for $43,200 of future receipts, repaid at $432 per day; (g) a

Bluevine line of credit; and (h) a Cylerity/Verity medical-claims funding facility utilizing a lender-controlled collection account.

16.    By June 2026, the Debtors' aggregate merchant-cash-advance and other debt service exceeded $60,000 per week, against approximately $105,000 per week of collections. In other words, debt service was consuming approximately 60% of the Debtors' revenue, an unsustainable burden for any operating business, let alone a licensed health care provider responsible for the care of residential patients.

17.    In June 2026, faced with the choice between servicing the merchant cash advance facilities and funding payroll and patient care, the Debtors ceased the ACH debits to the merchant cash advance funders in order to preserve payroll and patient care. Lenders promptly declared defaults. Forward Financing threatened the delivery of UCC lien notices to the Debtors' insurance payors, which would disrupt the receivable collections that fund the Debtors' operations. On June 24, 2026, the Debtors received a written final demand notice from one of their merchant-cash-advance creditors. In addition, Royal Oaks' $1,000,000 balloon maturity comes due in October 2026, an obligation the Debtors have no present ability to refinance or retire.

18.    The Debtors commenced these chapter 11 cases to preserve the going-concern value of their business, to protect the continuity of care for their patients, and to restructure their obligations through a subchapter V plan of reorganization. Absent chapter 11 protection, the escalating collection efforts of the merchant cash advance funders — including lien notices to insurance payors — would have destroyed the Debtors' revenue stream, forced the abrupt closure of licensed treatment facilities, and jeopardized the health and safety of the patients in the Debtors' care.

### III.  THE FIRST DAY MOTIONS

19.     Contemporaneously with the filing of their petitions, the Debtors filed the First Day Motions described below. I have reviewed each of the First Day Motions, and the facts stated in each are true and correct to the best of my knowledge, information, and belief. I believe the relief requested in each of the First Day Motions is essential to the Debtors' ability to transition smoothly into chapter 11, is necessary to avoid immediate and irreparable harm to the Debtors, their patients, their employees, and their estates, and is in the best interests of the Debtors' estates and creditors.

### A.  Motion for Joint Administration

20.     The Debtors seek the joint administration of their chapter 11 cases for procedural purposes only, with ARC as the lead case. The Debtors are affiliates within the meaning of section 101(2) of the Bankruptcy Code: CBH is the sole member and manager of ARC. The Debtors share common creditors and common lenders — including Royal Oaks and the merchant cash advance funders, most of which assert claims against, or filed UCC-1 financing statements covering, both Debtors — and their financial affairs are closely intertwined through CBH's central treasury function.

21.     Joint administration will avoid duplicative motions, notices, hearings, and orders in two parallel cases, will reduce administrative expense for the estates, the United States Trustee, the subchapter V trustee, and the Court, and will simplify case administration for creditors, virtually all of whom hold claims against or relating to both Debtors. The Debtors seek only procedural consolidation; the motion does not seek substantive consolidation, and the rights of parties in interest to seek or oppose substantive consolidation are unaffected. No creditor will be prejudiced by joint administration, and the relief is purely administrative. Joint administration of the Debtors' chapter 11 cases is warranted and will ease the administrative burden for the Court and the parties.

### B.  Motion to Pay Prepetition Wages and Related Obligations

22.      The Debtors' next regular payroll is due on July 10, 2026, for the payroll period ended July 4, 2026 — a period entirely prepetition. That payroll totals approximately $58,500, consisting of gross wages of approximately $52,024.87, together with associated payroll taxes, employee 401(k) contribution remittances, and employee benefit contributions, all administered through ADP TotalSource as the Debtors' PEO.

23.      The employees covered by the motion are the clinicians, therapists, nurses, and behavioral-health technicians who staff the Debtors' facilities and provide 24-hours-per-day, 7-days-per-week care to residential patients, together with essential support staff. No insider of the Debtors is included in the requested relief, and no employee will receive payment on account of prepetition obligations in excess of the $17,150 priority cap under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.

24.      If the July 10, 2026 payroll is not honored, I believe the consequences would be immediate and severe. The Debtors' employees are skilled health care workers who live paycheck to paycheck in a competitive labor market; a missed payroll would cause immediate resignations and staffing shortfalls that the Debtors could not absorb without compromising legally mandated staffing ratios at a residential treatment facility. The resulting disruption would endanger patient care, imperil the Debtors' AHCA licensure and accreditation, and destroy the going-concern value these cases are intended to preserve. Payment of prepetition wages within the statutory priority cap merely accelerates payment of claims that would in any event be entitled to priority.

### C.  Motion for Authority to Use Cash Collateral

25.      Cash generated from the Debtors' insurance receivables is the lifeblood of the Debtors' business. The Debtors have no source of funding other than the collection of their

accounts receivable, and virtually every dollar the Debtors collect may constitute cash collateral within the meaning of section 363(a) of the Bankruptcy Code.

26.     Based on a review of UCC filings, the parties that appear to assert liens on the Debtors' cash and receivables are (a) Royal Oaks, under its blanket UCC-1 filed October 8, 2024, and (b) certain of the merchant cash advance funders, whose UCC-1 financing statements were filed in the names of representative or servicing entities. The Debtors reserve all rights regarding the validity, priority, extent, and characterization of all asserted liens, including whether the merchant cash advance transactions are true sales of receivables or disguised secured loans.

27.     The Debtors have prepared a 12-week cash-flow budget in support of the motion. The budget was built from the Debtors' actual 2026 collection experience of approximately $460,000 per month, and it provides only for the ordinary and necessary expenses of operating the Debtors' facilities, including payroll, rent, utilities, insurance, and patient-care supplies.

28.     As adequate protection, the Debtors have proposed: (a) adequate-protection payments of $10,000.00 per month to Royal Oaks, commencing August 1, 2026; (b) replacement liens on postpetition receivables to the same extent, validity, and priority as any valid prepetition liens; (c) the maintenance of insurance on the Debtors' assets; and (d) financial reporting to the secured parties and the subchapter V trustee. I believe the proposed adequate protection is appropriate, particularly because continued operation of the Debtors' facilities — which continuously generates new receivables — is itself the best protection available to any secured party.

29.     Without immediate authority to use cash collateral, the Debtors could not fund the July 10, 2026 payroll, could not purchase food, medications, and supplies for patients in residence, and could not keep their facilities open. Residential mental-health patients would face abrupt

discharge or transfer, with attendant risk to their health and safety and to the Debtors' licensure. The harm from even a brief interruption in the use of cash would be immediate and irreparable.

### D.  Health Care Business Matters

30.     The Debtors are "health care businesses" within the meaning of section 101(27A) of the Bankruptcy Code. The Debtors have maintained, and will continue to maintain, their patient records in accordance with applicable federal and state privacy laws, and these cases are intended to preserve — not interrupt — continuity of patient care. The Debtors are prepared to address with the Court and the United States Trustee any issues concerning the appointment of a patient care ombudsman under section 333 of the Bankruptcy Code, including whether such an appointment is necessary for the protection of patients under the specific facts of these cases, in which patient care remains fully staffed, licensed, accredited, and uninterrupted.

## CONCLUSION

31.     For the reasons stated above and in each of the First Day Motions, the Debtors respectfully request that the Court grant the relief requested in the First Day Motions. Doing so will permit the Debtors to transition into these subchapter V cases with minimal disruption, will protect the health and safety of the Debtors' patients, will preserve the Debtors' workforce and going-concern value, and is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 7, 2026.

Evan Prager
Manager, Centric Behavioral Health, LLC, for itself
and as sole member and manager of Atlantic
Recovery Center, LLC